Ms. O'Keefe, would you announce our final case for argument today? Case 22-3567 United States v. Robin Roberts May it please the court, Robin Roberts was convicted after a jury trial of one count of sexual abuse and sentenced to over 15 years in prison. He raises multiple challenges on appeal. First, the prosecution expert testimony crossed the line into improper vouching and was inadmissible. Generally in these types of cases, as this court has stated over and over again and other courts have stated over and over again, generalities are fine. In these types of sex abuse, child sex abuse cases, generally what you see is an expert making pains to testify and saying, I'm not commenting on this case. I haven't met the victim. I'm not making any comment on whether they are believable or not. But then the expert will provide general information in this case about responses to trauma or maybe it's child sex abuse, accommodation syndrome, and they just provide the information to the jury. They don't tell the jury what to do with that information. The prosecutor is then free to do that in closing argument and to connect those dots. But prosecutors are not supposed to do that through their expert testimony. And that's what happened here. Not only with the alleged victim in this case, AB, but the two Rule 413 witnesses. Now I agree with you, I think, on the additional witnesses. But on AB, I wanted to ask about that. It seems like they didn't cross the line with AB. So it says, the question was, let's see, it talked about fawning, which was with regard to the officer. And then it went and said, that's a normal response to trauma, which seems to me to not be talking necessarily about AB or connecting it directly to AB. It required an inference by the jury to say that that would be vouching, which seems to me to be fine. I agree with you on the other witnesses, but help me with AB. I think I would urge the court not to consider it in a vacuum and how this testimony came in. And then it started with just the generalities, which we agree would be valid. But then the expert went into, what is AB doing? AB is exhibiting fawning. And immediately after that questioning, it's a normal, there's the response that it is a normal response to trauma. So you have an explanation of fawning. You have the expert saying, AB is exhibiting fawning. And then you have the question of, is fawning a normal response to trauma? There's no meaningful daylight between how that testimony came out and just, is fawning a normal response to trauma? Because essentially what that's doing is vouching, is saying, I just told you jurors that fawning is a response. I'm telling you that AB is exhibiting that, and that is totally normal. AB's testimony is also tainted by the later question in which the prosecution asked the expert about the three different, the women's three different responses to trauma, and is saying, well, what about the fact that they all exhibited different responses to trauma? What does that mean? And the expert, again, states that it's consistent with the trauma actually taking place. So her testimony is, our position, tainted in two kind of ways by this expert testimony. And as far as I can tell, the prosecutor's position on this issue is, well, so long as you're not saying, she's telling the truth. So long as you're not saying, I'm diagnosing this person with being sexually abused, then it doesn't cross the line into vouching, and that is simply just not the case. Case after case says generalities. In Johnson, in West, in Zephyr, this court has said it's proper because they're not commenting on this specific case. They're not connecting the dots. That's not what happened here. There was a comment, I think it's objectionable in and of itself, just saying this person is exhibiting fawning. But then to go a step further and to say that this is consistent with the trauma response, to say that the other witness was flight, and that's trauma response, and to say the other person is freeze, and that's the trauma response, that is over the line that this court and courts across the country have set for what is proper expert testimony in these types of cases. How would the government establish it? Suppose that the prosecution didn't ask the middle question, which is what kind of behavior is AB exhibiting? Could you, I mean, because the testimony becomes meaningless. If the expert says, oh, yeah, fawning is a typical response to trauma, then the jury is like, okay, well, what's fawning? I didn't know what fawning was. And so how would the government establish what fawning is? Would you bring in another expert, or what happens there? I think it's valid to say that an expert could provide examples of fawning. But what an expert can't do is say what this person did is fawning. And that's how it's generally done in these cases, and why these types of experts are commonly rebuttal witnesses, is the victim's credibility and their response has been challenged. So the prosecution brings in this expert to provide general information to the jury, which is all the expert is supposed to be able to do. The expert could have provided examples of fawning, explained it based off of their research. Then the prosecutor is free to argue in their closing argument and connect those dots. Say we had this expert come on and testify and tell you about these trauma responses. Look at how these victims or alleged victims reacted. That falls within what the expert told you. What they can't do is have the expert connect those dots and tell the jury how to interpret the research and the evidence that they're testifying about. And I would note, even more problematic specifically as to AB, there was, I don't know if you would call it speculation or appearing to consider things outside of the record, discussing that she was a people pleaser and perhaps this had worked for her in the past. There's no evidence of that. And again, this just illustrates how this is beyond the typical type of expert testimony that occurs in these cases. Experts don't get into generally the nitty-gritty of the alleged victims, what they did, how they reacted, and this expert just crossed the line in multiple ways. The error also was not harmless. In review evidentiary challenges, this type of evidentiary challenge, at least from my review, seems to be one where courts are not really keen to find harmless error. And that's because this isn't the kind of case where there's other physical evidence or there's other things that corroborate it. This was really a challenge of credibility. And courts know when it comes down to credibility, for example, in Whitehead, which was plain error, the court still said it went to credibility. So it impacted the trial and we're reversing even under a plain error standard. Let's go back to the expert testimony. And maybe I'm wrong, but my recollection is that it's quite common for, and this may be different than a situation of a forensic interviewer, but for a forensic interviewer to testify as an expert that the signs and symptoms that this person is showing are consistent with somebody who has been sexually abused, right? So there is a case from this circuit where... Don't they draw that closing, you know, connecting the dots, as you say, all the time? So that's... Let me finish. I'm sorry. Sorry to interrupt. But what they can't do then is go on to say, and therefore this defendant is guilty. Right. So there is a case from this circuit where they've allowed testimony similar to that. But again, that was 701, harking back to the previous argument, where the person had done the actual interview. So they're testifying based off of their personal perceptions. And they're saying, I'm trained in this, and I'm observing this alleged victim, and based off of how they're responding, I acknowledge or I believe that's consistent with the trauma response. Other courts don't allow that type of testimony, but I know the Eighth Circuit has at least in that case. But that's not what we have here. We don't have the expert coming in and saying, well, I observed, you know, I was there at the scene, and I observed this, and it's consistent, and I'm testifying based off of my personal perceptions. What was the base? Did they observe a video, or were they just saying hypothetically if this happened? I think she testified based off of the testimony. I think she wasn't... The expert was not there for all of the testimony, but she was there for quite a bit of it. And I don't recall specifically if there was any evidence that she said, well, I watched the videos or anything like that. I think it was basically the prosecution arguing or asking the expert, well, what about this type of behavior? So if she is saying, you remind me of Luke Bryan, would you call that fawning? I think that's generally how it came out, but I'm not 100% on that. But yeah, this isn't like the personal perception case where they're testifying based off of what they observed because they did the forensic interview. Instead, this is an expert connecting the dots when they should not have instead of just providing general testimony that would allow the jurors to determine what they wanted to do with it for themselves. I want to next get into the Federal Rule of Evidence 106 challenge with the excerpts and argument that the remaining... Our pointed out expert should have been included because what was introduced misled the jury into thinking Mr. Roberts just straight up admitted to the offense when the full video is established that was not the case. I'll start... Or I guess the main argument I'll discuss in today is this question of do you have to establish a separate hearsay exception for it to be admissible under Federal Rule of Evidence 106? And I think this court's prior case law, some more sternly than others, indicates that you do, but we know from an upcoming amendment, and it's not a substantive amendment, it's not a new rule, it's a clarification to Rule 106 where the committee is saying we acknowledge there's a circuit split on this question of whether you have to establish a separate hearsay exception, and we're telling you, no, you don't. And the government has noted, well, why would this apply on appeal? I admittedly could not find a case that dealt with a clarification of a rule of evidence, but this court does similar things all the time. It comes up a lot in the guidelines. If there's an amendment to the guidelines, it's not substantive. It's not like a first step back type of change. It's just a clarification saying we know courts disagreeing, we're telling you this is how it should be interpreted. Then it applies to individuals who cases are pending on appeal. The rationale being this amendment, this clarification, is just telling us what the rule was all along. And that happens even if there's a circuit split. That happens even if the circuit's precedent says otherwise. Courts note in those type of amendments, we apply them while the case is pending on appeal. Also similar to the idea of plein air, when a Supreme Court comes down with a new rule. We saw this a lot in rehafe. Even if you didn't object to it, it still established plein air because the court is saying what the law was all along. And that's what we have here with this amendment to Rule 106. We would have to overrule, I think, what's the case name? It's Ramos-Caraballo, a 2004 case if we went down that road based on what you say is a clarification. Do you agree with that? Yeah. Yes. And I think that's the case that most sternly says it, that you need to establish a hearsay exception. But again, when we have not a, we're not arguing there's this new substantive law that came down, a clarification from the drafters of the rules of evidence saying, actually, this is what it means that this court can do it. Because it's now clear that it's not required under the federal rules of evidence. Ms. Quig, educate me a little bit because at least traditionally, my understanding, you know, the sort of defendant's prior self-serving statements were excluded as hearsay in part because the defendant ought to take the stand and be cross-examined. Are you saying this clarification undermines all of that? No, Your Honor. I don't think it lets, let me, it's not an avenue for the defense attorney to say, well, let me get the good stuff in too. Right. Exactly. Right. But it still means in the circumstance where what they've admitted. Under the so-called rule of completeness. Right. It still goes to if what they've admitted gives a misleading picture of what happened and what the defendant actually said and you can establish that, then it comes in and we, you don't need to establish a separate hearsay exception. So you still have to establish that it's somehow the, whatever you want admitted in addition to what the government wants admitted is somehow makes it so it's not misleading. It clarifies or it provides context. You still have to do that under this new amendment for rule 106. You just don't have to, in addition, establish a separate hearsay exception. And are you able to establish those things? Yes, Your Honor. So I think, and I think part of the problem is Mr. Roberts' statements, he's kind of incoherent and a little bit all over the map. So it's easy to take one section and say it looks like he is admitting to the offense. And, for example, I think one of the most damaging ones was Government's Exhibit 3C. And in that excerpt, the officer says, you're performing oral sex on her, she wakes up and gets mad. And Roberts says, yes. And that's all that's admitted to the jury. But the immediate statements after are saying, why do you think she got mad? And Roberts says, you're supposed to be my adopted dad. Well, you said kiss you. And then the government was able, and it's similar issues with the other videos that we've detailed in the briefing, but then the government was able to come in in closing and say, well, he admitted. He admitted to the offense. He confessed to the crime. That's not really what happened when you look at these interviews in full and look at these other excerpts that we pushed to have admitted at the trial to establish the context and make sure it wasn't misleading. And just I want to follow up with one last question, which is on the rule issue, it's clear they actually say this is a clarification and this is what the rules always meant. Are you just inferring that? So I have it back at my desk, but I know that they discuss, I don't know if they use the word clarification. I know they definitely reference the circuit split and that there's a disagreement between courts and that's why they're doing it. But I can double check. I'll give you a minute in rebuttal if you want to check that. Thank you. Good morning, Your Honors. Lisa Williams representing the United States of America. I think I'll start where counsel left off, which is with the rule of completeness issue. But I do want to address the expert testimony issue that we started with. And I believe counsel's recollection of the rule is correct. It did talk about the circuit split. Although I'm in the same boat that counsel's in, so I can't answer the precise question for the court. But regardless, what the defendant is asking this court to do is to apply a rule that's not yet in effect retroactively to a trial. And that, to me, really is imposing some sort of de novo review process onto this court. Well, isn't the argument that the rule is in effect already? I mean, they're not rewriting the rule. I think that the rule in this circuit, how it's been interpreted through our case law, is what is binding on the district court and on this panel. And so the rule is subject to interpretation. And they may be clarifying the rule, but when we have binding precedent in this circuit interpreting that rule, until the rule is clarified, our circuit precedent controls. And that is that an independent exception to the hearsay rule must exist in order to get access. That's intuitive. But then you have, and this is why I think this rule is kind of silly, but we have the plein air rule, which says anything that happens while the case is on appeal, too bad, so sad, it's plainly erroneous if it's contrary to what the district court did. And I think that was close to a unanimous opinion by the Supreme Court and Henderson. So how do we reconcile those two things? So I think that you have to apply the correct standard of review. And what counsel is really advocating for is for this court to step in more with de novo powers and say we're going to take this big picture look at what's going on and do what we think is right. And I think instead it's more limited that, okay, there is this thing coming up. We have binding precedent. Do we see the harm? Was it harmless? Is there substantial rights being affected? And that's the more appropriate analysis to undertake because had it not been for this rule change, right, what we're normally looking at this for is abuse of discretion. Did the trial court abuse its discretion in finding and excluding this evidence? And so how can the trial court abuse its discretion when it's following binding circuit precedent? I don't think because then, of course, abuse of discretion is plainly erroneous contrary to law. There's no way that this court can find that the trial court abused its discretion by following circuit precedent. So because of that and how it is a very interesting kind of issue about how this all interplays with each other, I think that this court cannot conclude that the trial court abused its discretion because there is not an independent exception to the hearsay. But that's not the only part or component of analysis under this Rule 106 issue, of course, right? Also, the defendant has to prove that these statements were misleading and taken out of context, and then they also have to overcome the harmless error analysis. And failure on any three of those is fatal to the 106 claim. The government does not believe that these are misleading statements taken out of context. And I think what's key is what counsel said. Counsel said that he's a bit incoherent and all over the map. Any type of misleading parts of these statements, the government doesn't believe they're misleading, but it's due to Mr. Roberts' incoherency and all over the map. It's not due to the government coming in and splicing and manipulating his statements. And I wrote in the brief, you know, an example of something that would be misleading is if he was talking about a totally different victim or a totally different individual and we were somehow trying to pretend or claim that he was talking about the victim in this case. Or if he was talking about a totally different sex act on a different day and we were trying to argue that it was the July 9th act. That's how the government makes something misleading. But a defendant's own incoherentness that rambles and he tells multiple stories to police, that does not make a statement misleading to the point that Rule 106 is triggered. And I would give the example of a drug proffer. How many times does a drug defendant sit down for an initial post-Miranda interview and say, never dealt drugs in my life. And then by the end of the interview, he's like, all right, I dealt five kilos of meth to this guy and my source of supply is Tony and here are my customers. That a defendant changes his story, that a defendant goes in and goes out, doesn't mean that the final story is somehow misleading because the first story he said he didn't have anything to do with it. Yeah, but this is different. This is, I mean, to be fair to the defendant's argument, this is, yeah, I did it. And I know there are two separate questions. Yeah, I did it. But she told me to. And what you're saying is, yeah, you're admitting, yeah, I did it. But you're excluding that. But she told me to. So, I mean, just as a matter, again, two different states. So maybe it's different. But that's essentially, I think, what we have here. Well, and I would say, Your Honor, there's actually even a third version, too, because when he's at the police station with the FBI at the very end of the interview, then he goes a third pivot and says she never was asleep at all. So I think it's more similar to that drug defendant, that as he's telling the story, he's realizing some things are good for me and some things are bad for me. And he's manipulating and changing his story to try to help himself. And that doesn't mean that the government taking the inculpatory statements that are bad for him is misleading. It just means that he wised up and figured out that he shouldn't admit that she was asleep. Well, maybe the later statement. But these were literally two questions consecutively to one another. And it just seems to me like if I'm the juror and I hear, yeah, he did it, or yeah, I did it, I would also want to know if in the very next breath he said, yeah, but she told me to. Maybe it's not legally significant, but that seems to complete the story. So two components, yeah, I did it. He, through the trial, agreed that he performed the oral sex on her, and even in closing counsel conceded that. It was she was awake or she was asleep when it happened. And then the next question, though, is why did she get mad? And that question and the answer, oh, she got mad because I'm her adopted dad, doesn't explain the context of the statement before that she was asleep. And then after he answers that question, then he goes back to she told me to kiss her. But, again, it's the defendant's evolution of the story that changes by his own making. It's not the government's manipulation of the story that leads to something misleading. Can one difference be that they both can be true? And now I understand there is something in between. But you could say, yeah, I did it. And, again, I'm not sure this is legally significant. Yeah, I did it, but she told me to kiss her. Right? So both of those things can be, in other words, it's not a changing of the story. It's actually completing the story. I think given what the government focused on and the elements of defense, which was that she was incapable of consenting because she was asleep, I don't think that you can have both things be true. She's either asleep when he begins the oral sex or she's awake saying, please come kiss me and perform these sex acts with me. But I don't think you can reconcile both of them into one story, just because of the nature of what this story is about. I think that there are probably some hypos where you could, Your Honor, and that's a different situation. But here she's either awake and wants to engage in sex, or she's asleep and doesn't know what's going on. So I want to turn, then, to the expert rule. And, again, just real quick, of course, they often prove harmless error, and I'll rely on the government's briefing about why any error in the Rule 106 was harmless. With respect to the expert testimony, I think, first, it's important to talk about the standard of review, because there is some discrepancy between the government's position and the defendant's position. There is one objection, and it's just a 702 objection. And there is a lot of testimony that comes in before that objection is even lodged. And we heard some of counsel addressing some of that, the people-pleasing, she resorts to people-pleasing because that's what she knows. All of that, that she's fawning with the pretty eyes, all of that testimony came before the one objection was ever lodged. So this court has to review all of that for plain error. And that was all about AB, is that correct? That's correct, Your Honor. Then there's the one objection, and the objection simply is 702. The objection has to be specific enough to allow the court and the parties to know what the basis of the objection is. And I submit that a 702 objection is not specific enough to give rise to your improperly vouching for the witness. Now, the government is not arguing that that question and answer are subject to plain error review. We agree that that's an abuse of discretion. But what counsel then wants is everything following to also not be subject to plain error review, and the government disagrees with that because vouching wasn't on anybody's minds. And here's the reason, and this brings me to the second part. Counsel said you can't look at this in a vacuum. I wholeheartedly agree. We have to step back and see what's going on. This is, first of all, a fairly insignificant part of the trial.